# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PERCEPT TECHNOLOGIES INC., <br><br> Plaintiff, <br><br> v. <br><br> MAGIC LEAP, INC., <br><br> Defendant. | C.A. No. _____ <br><br> Patent Case <br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Percept Technologies Inc. ("Percept") complains of Defendant Magic Leap, Inc. ("Magic Leap") as follows:

### JURISDICTION AND VENUE

1. Title 28 of the United States Code Section 1338(a) confers subject matter jurisdiction on this Court because Defendant has infringed Plaintiff's patent. The Patent Act of 1952, as amended, 35 U.S.C. § 271, *et seq.*, makes patent infringement actionable through a private cause of action.

2. Magic Leap is a Delaware Corporation, with a headquarters in Plantation, Florida.

3. Venue is proper in the District of Delaware since Defendant is a Delaware corporation.

### PARTIES

4. Percept is a Nevada corporation with its principal place of business at 10080 W. Alta Drive, Suite 200, Las Vegas, NV 89145. Percept is the assignee of and owns all right, title and interest in and has standing to sue for infringement of United States Patent Nos. 8,696,113 ("the '113 Patent"), entitled Enhanced Optical and Perceptual Digital Eyewear and attached

1

herewith as Exhibit A, and 9,010,929 ("the '929 Patent"), entitled Digital Eyewear and attached herewith as Exhibit B (collectively, "the Digital Eyewear Patents").  The '113 Patent issued April 15, 2014, and the '929 Patent issued April 21, 2015. Dr. Scott W. Lewis ("Lewis") is the inventor of the Digital Eyewear Patents, and is a principal of Percept.

5. Defendant is a Delaware corporation with its principal place of business at 7500 W. Sunrise Blvd., Plantation, Florida 33313.  Defendant has previously and is presently making, using, selling, offering for sale, and/or importing into the United States digital eyewear products that directly infringe one or more claims of the Digital Eyewear Patents. Defendant has also infringed the Digital Eyewear Patents through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271.

BACKGROUND

6. Percept is the owner of patent rights which cover commercially significant technologies involving an eyewear structure and a method of providing eyewear that enhance the use of eyewear.  The eyewear enhancement provided by the Digital Eyewear Patents include 1) media focals which use imaging techniques to improve the vision of the user and convey a variety of types of information; 2) telecommunications enhancements that allow the eyeglasses to be integrated with telecommunication devices such as cell phones; and/or 3) entertainment enhancements, such as gaming and social communication, as well as those that allow the eyewear to be integrated with devices such as MP3 players or radios.

7. The sole inventor of the Digital Eyewear Patents is Dr. Scott W. Lewis, a multimedia pioneer and technology visionary who has 20 issued U.S. Patents and dozens pending or in development.  Dr. Lewis was educated at the Massachusetts Institute of Technology, Oxford

University, and Harvard Business School. He is the founder of several technology companies, including Percept.

8. Defendant designs, manufactures, offers for sale, uses and teaches the use of the features of at least claims 7 and 10 of the '929 Patent and claims 1 and 12 of the '113 Patent through its Magic Leap 1 product. The Magic Leap 1 includes eye tracking and incorporates a variety of media focal and entertainment/multimedia enhancements.

9. In January of 2017, Lewis spoke with Magic Leap's then-CEO Rony Abovitz ("Abovitz"). They discussed the Percept portfolio in detail, and the benefits to Magic Leap of a license. During that phone call, Mr. Abovitz specifically confirmed to Dr. Lewis that he had reviewed Percept's patents, and Lewis spent roughly 45 minutes walking through the benefits of the Percept portfolio, and their potential applicability to future Magic Leap products. This discussion placed Magic Leap on notice of both the existence of the Digital Eyewear Patents and the applicability of their claims to potential Magic Leap products, including the Magic Leap 1.

10. In December of 2019, Magic Leap formally announced the launch of the Magic Leap 1, which had been sold in a beta program since mid-to-late 2018.

11. All sales of the Magic Leap 1 took place after Abovitz's meeting with Lewis.

12. Despite attempts to contact Abovitz to continue discussions, Lewis and Percept were unable to do so, as Abovitz ceased responding to communications.

13. In mid to late 2020, Peggy Johnson was named the new CEO of Magic Leap.

14. In September of 2020, through counsel, Percept again contacted Magic Leap, reminding them of their ongoing infringement and offering to negotiate a license.

15. To date, there has been no response.

16. Magic Leap offers the Magic Leap 1 for sale, and also offers a white glove delivery and setup service, which includes calibration and setup assistance.

17. Percept has purchased a Magic Leap 1, along with the white glove delivery service.

18. Defendant's continued and ongoing infringement after being put on notice of Percept's patent rights is reckless, without objective basis, and willful.

## PATENT INFRINGEMENT

19. Defendant has infringed and continues to infringe at least claims 7 and 10 of the '929 Patent and claims 1 and 12 of the '113 Patent through its eye tracking augmented reality headset, the Magic Leap 1, among others, in violation of 35 U.S.C. § 271 through, among other activities, making, using, offering to sell, and/or selling its Magic Leap One mixed reality headset.

20. Defendant's infringing technology and products include without limitation its Magic Leap 1, which is a mixed reality headset, referred to by Magic Leap as a "spatial computer". The Magic Leap 1 includes eye-tracking within a virtual reality or augmented reality headset, connected to a control module, referred to by Magic Leap as a "lightpack". Defendant's infringement may include additional products, services and technologies (to be determined in discovery) marketed or used by Defendant.

## '929 PATENT CLAIM 7

21. Defendant infringes claim 7 of the '929 Patent. Its preamble states "Eyewear comprising:". This is the preamble of the claim, and not necessarily a limitation that needs to be satisfied to show infringement. Generally speaking, the Magic Leap 1 is eyewear.

22. The first limitation of claim 7 states "a frame member." The Magic Leap 1 has a frame member in which the lenses, waveguides, and other circuitry are worn in the form of a modern-styled set of eyeglasses.

23. The second limitation of claim 7 states "a lens." The Magic Leap 1 has two lenses, one over each eye.

24. The third and final limitation of claim 7 states "circuitry within the frame member for enhancing the use of the eyewear; and an eye sensor coupled to the frame member, the eye sensor activating the circuitry responsive to eye motion of a user; wherein the circuitry provides any of a cell phone, media focals, and an MP3 player." For analysis, the third limitation of claim 7 can be divided into several sub-limitations.

25. The first sub-limitation of the third limitation of claim 7 states "circuitry within the frame member for enhancing the use of the eyewear." The Magic Leap 1 headset contains such circuitry. This circuitry includes, among other things, and critically, series wired eye-tracking IR sensors and their support circuitry, waveguides, and an LCOS display device, along with a six-degrees-of-freedom tracking module, flex cables, and a variety of vision and image processing circuitry.

26. The second sub-limitation of the third limitation of claim 7 states "and an eye sensor coupled to the frame member, the eye sensor activating the circuitry responsive to eye motion of a user." The Magic Leap 1 has multiple eye sensors, including two eye-tracking IR cameras paired with IR emitter for eye tracking.

27. The third and final sub-limitation of the third limitation of claim 7 states "wherein the circuitry provides any of a cell phone, media focals, and an MP3 player. The Magic Leap 1 provides media focals, and also permits the playing of MP3 files through the circuitry of the Magic Leap 1. The Magic Leap developer kit, for example, specifically describes using MLDB to "play .wav, .mp3, and .ogg files that are saved in the C1 folder in the user documents directory[,]" and

how to spatially locate the mp3 playback. The example of using command "mldb audioplayer audio.composite.mp3" to "play *composite.mp3* through the speakers on the device." is used.

'929 PATENT CLAIM 10

28. Defendant also infringes claim 10 of the '929 Patent. Its preamble states "Eyewear comprising:". This is the preamble of the claim, and not necessarily a limitation that needs to be satisfied to show infringement. Generally speaking, the Magic Leap 1 is augmented reality eyewear.

29. The first limitation of claim 10 states "a frame member." The Magic Leap 1 has a frame member as set forth in ¶22.

30. The second limitation of claim 10 states "a lens." The Magic Leap 1 has a lens as set forth in ¶23.

31. The third and final limitation of claim 10 states "circuitry within the frame member for enhancing the use of the eyewear; and an eye sensor coupled to the frame member, the eye sensor activating the circuitry responsive to eye motion of a user; wherein the circuitry can provide any of texts, email; multimedia information; caller id." For analysis, the third limitation of claim 10 can be divided into several sub-limitations.

32. The first sub-limitation of the third limitation of claim 10 states "circuitry within the frame member for enhancing the use of the eyewear." The Magic Leap 1 module has such circuitry as set forth in ¶24.

33. The second sub-limitation of the third limitation of claim 10 states "and an eye sensor coupled to the frame member, the eye sensor activating the circuitry responsive to eye motion of a user." The Magic Leap 1 has such eye sensors as set forth in ¶¶24-25.

34. The third and final sub-limitation of the third limitation of claim 10 states "wherein the circuitry can provide any of texts, email; multimedia information; caller id." The Magic Leap 1 provides multimedia information, including through use of its native multimedia playback application.

35. Defendant has known of the '929 Patent at least as early as January of 2017. Accordingly, from at least January 2017 onwards, Defendant specifically intended to infringe the '929 Patent because it knew that its eye tracking virtual reality headset includes all the elements of asserted claims 7 and 10. In particular, Defendant's headset is eyewear comprising a frame member, a lens, circuitry within the frame member for enhancing the use of the eyewear, an eye sensor coupled to the frame member, the eye sensor activating the circuitry responsive to eye motion of a user, wherein the circuitry provides media focals and multimedia information. Defendant offered to sell, has been offering to sell, used the headsets, and has been using the headsets with knowledge that they infringe the '929 Patent. Defendant thereby has induced and is inducing infringement of the '929 Patent, in addition to directly infringing the '929 Patent.

36. Defendant has sold, offered to sell, and/or imported products incorporating the inventions constituting the '929 Patent. Specifically, Defendant has sold and offered to sell its eye tracking augmented reality headset in infringement of the '929 Patent. Since at least as early as January 2017 Defendant knew that the accused headsets in development were patented, and were especially made, adapted and designed for use in infringement of the '929 Patent. The infringing eye tracking virtual reality headsets and their components are not staple articles or commodities of commerce capable of substantial non-infringing use. Defendant thereby has also contributorily infringed and is contributorily infringing the '929 Patent.

37. As a direct and proximate consequence of Defendant's direct infringement, contributory infringement and/or inducement to infringe, Percept has been, is being and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284 adequate to compensate for such infringement, but in no event less than a reasonable royalty.

38. Defendant's direct infringement, contributory infringement and/or inducement to infringe will continue to injure Percept, unless and until this Court enters an injunction, which prohibits further infringement and specifically enjoins further manufacture, use, sale and/or offer for sale of products or services that come within the scope of the '929 Patent.

39. Defendant's infringement of the '929 Patent has been willful.

'113 PATENT CLAIM 1

40. Defendant infringes claim 1 of the '113 Patent. Its preamble states "A wearable optics device comprising:". This is the preamble of the claim, and not necessarily a limitation that needs to be satisfied to show infringement. Generally speaking, the Magic Leap 1 is a wearable optics device.

41. The first limitation of claim 1 states "a lens." The Magic Leap 1 has two lenses, one over each eye.

42. The second and final limitation of claim 1 states "a dynamic eye tracking mechanism in communication with the lens; wherein the dynamic eye tracking mechanism utilizes optical parameter measurements; wherein the optical parameter measurements include any of ciliary measurements, pupil measurements, corneal measurements, eye lens measurements, iris measurements, eye lid measurements, retina measurements; wherein an optical/perceptual

parameter based operating system is utilized, wherein the wearable optics device is controlled by the optical/perceptual based operating system." For analysis, the second limitation of claim 1 can be divided into several sub-limitations.

43. The first sub-limitation of the second limitation of claim 1 states "a dynamic eye tracking mechanism in communication with the lens." The Magic Leap 1 headset has multiple eye sensors, including two eye-tracking IR cameras paired with an IR emitter for eye tracking. The eye sensors are in communication with the lens, enabling users to interact with digital content by looking at it.

44. The second sub-limitation of the second limitation of claim 1 states "wherein the dynamic eye tracking mechanism utilizes optical parameter measurements; wherein the optical parameter measurements include any of ciliary measurements, pupil measurements, corneal measurements, eye lens measurements, iris measurements, eye lid measurements, retina measurements." The eye sensors of the Magic Leap 1 headset utilize at least pupil and corneal optical parameter measurements.

45. The third sub-limitation of the second limitation of claim 1 states "wherein an optical/perceptual parameter based operating system is utilized, wherein the wearable optics device is controlled by the optical/perceptual based operating system." The Magic Leap 1 headset utilizes an optical/perceptual parameter based operating system to control the headset, such as by allowing users to interact with digital content by looking at it.

### '113 PATENT CLAIM 12

46. Defendant also infringes claim 12 of the '113 Patent. Its preamble states "A wearable optics device comprising:". This is the preamble of the claim, and not necessarily a

limitation that needs to be satisfied to show infringement. Generally speaking, the Magic Leap 1 is a wearable optics device.

47. The first limitation of claim 12 states "a lens." The Magic Leap 1 has two lenses, one over each eye.

48. The second and final limitation of claim 12 states "a dynamic eye tracking mechanism in communication with the lens; wherein the dynamic eye tracking mechanism utilizes optical parameter measurements; wherein the optical parameter measurements include any of ciliary measurements, pupil measurements, corneal measurements, eye lens measurements, iris measurements, eye lid measurements, retina measurements; wherein an optical/perceptual parameter based operating system is utilized, wherein the lens includes a plurality of layers." For analysis, the second limitation of claim 12 can be divided into several sub-limitations.

49. The first sub-limitation of the second limitation of claim 12 states "a dynamic eye tracking mechanism in communication with the lens." The Magic Leap 1 headset has multiple eye sensors, including two eye-tracking IR cameras paired with an IR emitter for eye tracking. The eye sensors are in communication with the lens, enabling users to interact with digital content by looking at it.

50. The second sub-limitation of the second limitation of claim 12 states "wherein the dynamic eye tracking mechanism utilizes optical parameter measurements; wherein the optical parameter measurements include any of ciliary measurements, pupil measurements, corneal measurements, eye lens measurements, iris measurements, eye lid measurements, retina measurements." The eye sensors of the Magic Leap 1 headset utilize at least pupil and corneal optical parameter measurements.

51. The third sub-limitation of the second limitation of claim 12 states "wherein an optical/perceptual parameter-based operating system is utilized." The Magic Leap 1 headset utilizes an optical/perceptual parameter-based operating system to control the headset, such as by allowing users to interact with digital content by looking at it.

52. The fourth sub-limitation of the second limitation of claim 12 states "wherein the lens includes a plurality of layers." The Magic Leap 1 headset lens includes a waveguide with a plurality of layers.

53. Defendant has known of the '113 Patent at least as early as January of 2017. Accordingly, from at least January 2017 onwards, Defendant specifically intended to infringe the '113 Patent because it knew that its eye tracking virtual reality headset includes all the elements of asserted claims 1 and 12. In particular, Defendant's headset is a wearable optics device comprising a lens, a dynamic eye tracking mechanism in communication with the lens; wherein the dynamic eye tracking mechanism utilizes optical parameter measurements; wherein the optical parameter measurements include any of ciliary measurements, pupil measurements, corneal measurements, eye lens measurements, iris measurements, eye lid measurements, retina measurements; wherein an optical/perceptual parameter based operating system is utilized, wherein the wearable optics device is controlled by the optical/perceptual based operating system, and wherein the lens includes a plurality of layers. Defendant offered to sell, has been offering to sell, used the headsets, and has been using the headsets with knowledge that they infringe the '113 Patent. Defendant thereby has induced and is inducing infringement of the '113 Patent, in addition to directly infringing the '113 Patent.

54. Defendant has sold, offered to sell, and/or imported products incorporating the inventions constituting the '113 Patent. Specifically, Defendant has sold and offered to sell its eye

tracking augmented reality headset in infringement of the '113 Patent. Since at least as early as January 2017 Defendant knew that the accused headsets in development were patented, and were especially made, adapted and designed for use in infringement of the '113 Patent. The infringing eye tracking virtual reality headsets and their components are not staple articles or commodities of commerce capable of substantial non-infringing use. Defendant thereby has also contributorily infringed and is contributorily infringing the '113 Patent.

55. As a direct and proximate consequence of Defendant's direct infringement, contributory infringement and/or inducement to infringe, Percept has been, is being and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284 adequate to compensate for such infringement, but in no event less than a reasonable royalty.

56. Defendant's direct infringement, contributory infringement and/or inducement to infringe will continue to injure Percept, unless and until this Court enters an injunction, which prohibits further infringement and specifically enjoins further manufacture, use, sale and/or offer for sale of products or services that come within the scope of the '113 Patent.

57. Defendant's infringement of the '113 Patent has been willful.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Percept demands a trial by jury on all issues presented that can properly be tried to a jury.

REQUEST FOR RELIEF

THEREFORE, Percept asks this Court to enter judgment against Defendant and against its subsidiaries, affiliates, agents, servants, employees and all persons in active concert or participation with Defendant, granting the following relief:

A. An award of damages adequate to compensate Percept for the infringement that has occurred, together with prejudgment interest from the date infringement began and post-judgment interest;

B. A finding of willfulness;

C. All other damages permitted by 35 U.S.C. § 284;

D. Enhanced damages;

E. A permanent injunction prohibiting further direct infringement, inducement and contributory infringement of the '929 and '113 Patents; and

F. Such other and further relief as this Court or a jury may deem proper and just.

Dated: January 6, 2022                                             Respectfully submitted,

PERCEPT TECHNOLOGIES INC.
By Counsel

/s/ *Tracy L. Pearson*
Tracy L. Pearson (DE Bar #5652)
Rolando Diaz (DE Bar #5845)
**DUNLAP BENNETT & LUDWIG PLLC**
1509 Gilpin Avenue, Ste. 2
Wilmington, DE 19806
Tel: (302) 273-4249
Fax: (855) 223-8791
tpearson@dbllawyers.com
rdiaz@dbllawyers.com

OF COUNSEL:
William W. Flachsbart (*pro hac vice* forthcoming)
**DUNLAP BENNETT & LUDWIG PLLC**
333 N. Michigan Ave., Suite 2700
Chicago, IL 60601
Tel: 312-551-9500
Fax: 312-551-9501
wflachsbart@dbllawyers.com

*Attorneys for Plaintiff Percept Technologies Inc.*